## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**Ivette Compton,**

     **Plaintiff,**

**vs.**

**Sleepnet, Corp.,**

     **Defendant.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Ivette Compton, hereinafter referred to as ("Plaintiff") by and through her undersigned attorneys, sues the Defendant, Sleepnet, Corp., hereafter referred to as ("Defendant") and alleges as follows:

## JURISDICTION AND VENUE

1.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 because this civil action arises under the Constitution, laws, or treaties of the United States.

2.     Venue lies within the United States District Court for the Middle District of Florida, Tampa Division, in accordance with 28 U.S.C. § 1391(b) because Plaintiff resides in this Judicial District and because a substantial part of the events giving rise to this claim occurred in this Judicial District.

1

## ADMINISTRATIVE PREREQUISITES

3.      All conditions precedent to bringing this action have occurred.

4.      On July 14, 2025, Plaintiff timely filed a Charge of Discrimination with the Equal Opportunity Employment Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR").

5.      On January 13, 2026, the EEOC issued a Dismissal and Notice of Rights related to Plaintiff's Charge of Discrimination. This Complaint is filed within ninety (90) days of the issuance of the Dismissal and Notices of Rights; therefore, Plaintiff has met all conditions precedent to filing this Complaint.

## PARTIES

6.      Plaintiff is a resident of Pinellas County, Florida.

7.      Defendant is a foreign corporation, licensed and authorized to conduct business in the State of Florida and doing business within Pinellas County, Florida.

## GENERAL ALLEGATIONS

8.      Defendant is an employer as defined by the laws under which this action is brought and employs the required number of employees.

9.      At all times material, Plaintiff was qualified to perform her job duties within the legitimate expectations of her employer.

2

10. Plaintiff has been required to retain the undersigned counsel to represent her in this action and is obligated to pay them a reasonable fee for their services.

11. Plaintiff requests a jury trial for all issues so triable.

## FACTS

12. Plaintiff was employed by Sleepnet Corporation as Vice President of Sales. Plaintiff consistently exceeded performance expectations, earning promotion from Independent Sales Representative to Vice President of Sales, where she surpassed revenue targets, led international expansion, and generated significant revenue. At no time prior to her termination was Plaintiff disciplined or advised that her performance was deficient.

13. At all times material, Plaintiff was an eligible employee under the Family and Medical Leave Act, and Defendant was an employer covered by the Family and Medical Leave Act.

14. Plaintiff informed Defendant that she would require medical leave beginning on or about April 23, 2025, for her hip replacement surgery and related recovery, thereby providing notice of her intent to take FMLA-protected leave.

15. In January 2025, Plaintiff's physician recommended that she undergo a hip replacement and corrective surgery for complications from a previous

femoral head procedure.

16.    Plaintiff immediately let the company's President, Kevin McCarthy know about this medical need.

17.    To fulfill her work obligations and continue performing at a high level, Plaintiff chose to receive a pain blocker injection on January 22, 2025, which allowed her to delay surgery and her extended medical leave to April 23, 2025, so she could carry out scheduled international sales trips in February (Spain), March (Italy), and April (Brazil) of 2025.

18.    Throughout this period, Plaintiff continued to perform her job duties effectively.

19.    On April 5, 2025, less than two weeks before her termination, Mr. McCarthy complimented Plaintiff's productivity and stated she was "getting a lot done."

20.    Despite this recent praise and her active performance, Plaintiff was abruptly terminated on April 18, 2025, three business days before her scheduled surgery.

21.    That day on April 18, 2025, Mr. McCarthy initiated a Microsoft Teams meeting under the pretext of a "Monthly International Sales Recap." During the

meeting, he opened by stating. "This meeting will probably be different from what you were expecting. Today, I'm terminating your job with Sleepnet Corporation."

22.    When Plaintiff asked if the decision was due to her medical leave or performance, he explicitly said, "No, you have never done anything to harm the company," but cited vague "philosophical differences" as his reasoning.

23.    Mr. McCarthy also told Plaintiff he wanted to let her go before her medical leave so she could "think about the next steps in your career during your time off," rather than wait until after she returned from leave to fire her.

24.    After the termination meeting on April 18, 2025, Plaintiff texted Mr. McCarthy asking when her last day was for insurance. Mr. McCarthy responded, "Talking with Deb- covered thru June 30 – you will have 1 additional payment which Deb will explain in writing by Monday. Deb also stating the payment can be deducted from your final payment of commission, etc if you wish."

25.    In addition, Plaintiff received two phone calls from Deb Grutter, Human Resource Liaison, Sleepnet Corporation, warning her not to share that she was no longer with the company or tell clients who reach out to her that she was terminated, but rather say she was on medical leave.

26.    The last call Plaintiff received was within 24 hours before her surgery, putting a lot of undue stress and worries before her surgery.  This lack of clarity

and harassment left Plaintiff filled with stress, anxiety, and fear in the hours leading up to her surgery.

27.    This inconsistent explanation, contradicted by Mr. McCarthys own praise just days earlier, strongly suggests that her termination was a pretext to avoid accommodating her medical condition, disability leave, and her age (65).

28.    Further, Mr. McCarthy and other employees had previously demonstrated awareness of and focused on Plaintiff's physical limitations in ways that support an inference of discrimination.

29.    On multiple occasions, including during a November 2024 international trade show in Germany, Mr. McCarthy commented on Plaintiff's physical condition and questioned her health in a manner reflecting concern about her continued ability to work.

30.    At the same German trade show, Mr. McCarthy asked Plaintiff, "When are you planning to retire?"

31.    During a December 2024 holiday event, several employees commented about Plaintiff's leg and lack of mobility.

**Failure to Enroll Plaintiff in Employer-Sponsored Insurance Plan**

32.    Defendant offered its employees, including Plaintiff, employer-sponsored insurance benefits, including group hospital indemnity insurance, with premiums paid through automatic payroll deductions.

33.    Plaintiff timely elected coverage and paid all required insurance premiums through payroll deductions administered by Defendant and/or its professional employer organization.

34.    Despite collecting Plaintiff's insurance premiums, Defendant failed to properly enroll Plaintiff in the insurance plan and failed to ensure that her coverage was accurately reflected in the insurer's system.

35.    At all times material, Defendant exercised discretionary authority and control over plan enrollment, benefit administration, and communications with Plaintiff regarding her insurance coverage.

36.    As a result of Defendant's failure to enroll Plaintiff, Plaintiff was denied insurance benefits when she required medical care and hospitalization in April 2025.

37.    Plaintiff was informed that her claim was denied because her coverage was listed as terminated as of June 30, 2023, even though premiums had been continuously paid and no lapse in payment had occurred.

38.    Plaintiff never received a certificate of insurance, summary of benefits, or plan terms describing eligibility requirements or benefit limitations, including any inpatient confinement requirement, because Defendant failed to properly enroll her in the plan.

39.    Defendant's failure to enroll Plaintiff in the insurance plan, despite collecting premiums, directly caused Plaintiff to lose insurance benefits and incur significant out-of-pocket medical expenses.

## COUNT I
## FAMILY MEDICAL LEAVE ACT – INTERFERENCE

40.    Plaintiff realleges and adopts the allegations stated in Paragraphs 1 through 39.

41.    Defendant interfered with Plaintiff's FMLA rights by terminating her employment before she could commence protected medical leave for which she was eligible and had provided notice.

42.    Defendant's actions constitute violations of the FMLA.

43.    As a result of Defendant's unlawful actions Plaintiff has suffered damages.

WHEREFORE, Plaintiff prays for judgment against Defendant for the following damages:

a.    Back pay and benefits;

b.      Interest;

c.      Liquidated damages;

d.      Attorney's fees and costs;

e.      Equitable relief;

f.      Such other relief as is permitted by law.

**COUNT II**
**(FMLA DISCRIMINATION/RETALIATION)**

44.     Plaintiff realleges and adopts the allegations stated in Paragraphs 1 through 39.

45.     Defendant retaliated against Plaintiff for asserting and attempting to exercise rights protected under the Family and Medical Leave Act.

46.     Defendant's actions constitute violations of the FMLA.

47.     As a result of Defendant's actions Plaintiff has suffered damages.

WHEREFORE, Plaintiff prays for judgment against Defendant for the following damages:

a.      Back pay and benefits;

b.      Interest;

c.      Liquidated damages;

d.      Attorney's fees and costs;

e.      Equitable relief;

f.     Such other relief as is permitted by law.

**COUNT III**

**AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT OF 2008
("ADAAA") DISABILITY DISCRIMINATION**

48.     Plaintiff realleges and adopts the allegations stated in Paragraphs 1 through 39.

49.     Plaintiff is an individual entitled to protection under the Americans With Disabilities Act Amendments of 2008 ("ADAAA") and was an employee within the meaning of the ADAAA.

50.     Plaintiff is a qualified individual with a disability within the meaning of the ADAAA, because Plaintiff, with a reasonable accommodation, could perform the essential functions of her job with Defendant.

51.     By the conduct described above, Defendant engaged in unlawful employment practices in violation of the ADAAA, took adverse employment actions against Plaintiff and discriminated against Plaintiff because of her disability.

52.     As a result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages, including, but not limited to, the following:

a.     Back pay and benefits;

b.     Interest on back pay and benefits;

10

c.    Front pay and benefits;

d.    Compensatory damages, including damages for mental anguish, loss of dignity, and other intangible injuries;

e.    Punitive damages;

f.    Pecuniary and non-pecuniary losses;

g.    Attorney's fees and costs; and

h.    For any other relief this Court deems just and equitable.

**COUNT IV**
**AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT OF 2008 ("ADAAA") FAILURE TO ACCOMMODATE**

53.    Plaintiff realleges and adopts the allegations stated in Paragraphs 1 through 39.

54.    Plaintiff is an individual entitled to protection under the Americans With Disabilities Act Amendments of 2008 ("ADAAA") and was an employee within the meaning of the ADAAA.

55.    Plaintiff is a qualified individual with a disability within the meaning of the ADAAA, because Plaintiff, with a reasonable accommodation, could perform the essential functions of her job with Defendant.

56.    By the conduct described above, Defendant engaged in unlawful employment practices in violation of the ADAAA, took adverse employment

actions against Plaintiff and discriminated against Plaintiff because of her disability. Further, Plaintiff was denied a reasonable accommodation in violation of the Act and Defendant failed to engage in the interaction process.

57.     As a result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages, including, but not limited to, the following:

  a.     Back pay and benefits;

  b.     Interest on back pay and benefits;

  c.     Front pay and benefits;

  d.     Compensatory damages, including damages for mental anguish, loss of dignity, and other intangible injuries;

  e.     Punitive damages;

  f.     Pecuniary and non-pecuniary losses;

  g.     Attorney's fees and costs; and

  h.     For any other relief this Court deems just and equitable.

## COUNT V
## FLORIDA CIVIL RIGHTS ACT ("FCRA") – DISABILITY DISCRIMINATION

58.     Plaintiff realleges and adopts the allegations stated in Paragraphs 1 through 39.

59.     As described above, Plaintiff has a disability, and/or the Defendant perceived her to have a disability as defined by Florida Civil Rights Act ("FCRA"),

Section 760.01, *et seq., Florida Statutes.*

60.    By the conduct described above, Defendant engaged in unlawful employment practices in violation of the FCRA, took adverse employment actions against Plaintiff and discriminated against Plaintiff because of her disability and/or perceived disability.

61.    As a result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages, including, but not limited to, the following:

a.    Back pay and benefits;

b.    Interest on back pay and benefits;

c.    Front pay and benefits;

d.    Compensatory damages, including damages for mental anguish, loss of dignity, and other intangible injuries;

e.    Punitive Damages

f.    Pecuniary and non-pecuniary losses;

g.    Attorney's fees and costs; and

h.    For any other relief this Court deems just and equitable.

## COUNT VI
## FLORIDA CIVIL RIGHTS ACT ("FCRA") – FAILURE TO ACCOMMODATE

62.    Plaintiff realleges and adopts the allegations stated in Paragraphs 1 through 39.

63.     As described above, Plaintiff has a disability, and/or the Defendant perceived her to have a disability as defined by Florida Civil Rights Act ("FCRA"), Section 760.01, *et seq.*, *Florida Statutes.*

64.     By the conduct described above, Defendant engaged in unlawful employment practices in violation of the FCRA, took adverse employment actions against Plaintiff and discriminated against Plaintiff because of her disability and/or perceived disability. Further, Plaintiff was denied a reasonable accommodation in violation of the Act and Defendant failed to engage in the interaction process.

65.     As a result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages, including, but not limited to, the following:

      a.     Back pay and benefits;

      b.     Interest on back pay and benefits;

      c.     Front pay and benefits;

      d.     Compensatory damages, including damages for mental anguish, loss of dignity, and other intangible injuries;

      e.     Punitive Damages

      f.     Pecuniary and non-pecuniary losses;

      g.     Attorney's fees and costs; and

h.    For any other relief this Court deems just and equitable.

## COUNT VII
## AGE DISCRIMINATION PURSUANT TO THE AGE DISCRIMINATION IN EMPLOYMENT ACT

66.    Plaintiff realleges and adopts the allegations stated in Paragraphs 1 through 39.

67.    Plaintiff is a member of a protected class under the Age Discrimination in Employment Act.

68.    Following Plaintiff's termination, Defendant replaced Plaintiff with a substantially younger employee, namely a 33-year-old male, to perform Plaintiff's job duties.

69.    By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of her age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*

70.    Defendant knew, or should have known of the discrimination.

71.    As a result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages, including, but not limited to, the following:

a.    Back pay and benefits;

b.    Interest on back pay and benefits;

c.    Front pay and benefits;

    d.     Liquidated damages;

    e.     Injunctive relief;

    f.     Costs and attorney's fees;

    g.     For any other relief this Court deems just and equitable.

## COUNT VIII
### FCRA- AGE DISCRIMINATION

72.    Plaintiff realleges and adopts the allegations stated in Paragraphs 1 through 39.

73.    Plaintiff is a member of a protected class under the Florida Civil Rights Act.

74.    Following Plaintiff's termination, Defendant replaced Plaintiff with a substantially younger employee, namely a 33-year-old male, to perform Plaintiff's job duties.

75.    By the conduct described above, Defendant engaged in unlawful employment practices and discriminated against Plaintiff on account of her age in violation of the Florida Civil Rights Act, Florida Statutes Chapter 760.

76.    Defendant knew, or should have known of the discrimination.

77.    As a result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damages, including, but not limited to, the following:

    a.     Back pay and benefits;

16

b.    Interest on back pay and benefits;

c.    Front pay and benefits;

d.    Compensatory damages;

e.    Punitive damages;

f.    Costs and Attorneys' Fees;

g.    Injunctive relief;

h.    For any other relief this Court deems just and equitable.

## COUNT IX
### ERISA – DENIAL OF BENEFITS 29 U.S.C. § 1132(a)(1)(B) IN THE ALTERNATIVE ERISA – BREACH OF FIDUCIARY DUTY 29 U.S.C. § 1132(a)(3)

78.    Plaintiff realleges and adopts the allegations stated in Paragraphs 1 through 39.

79.    Defendant sponsored and/or administered an employee welfare benefit plan governed by ERISA, which provided group hospital indemnity insurance benefits to eligible employees.

80.    Plaintiff was a participant in and/or beneficiary of the ERISA plan and paid all required premiums through payroll deductions.

81.    Defendant failed to properly enroll Plaintiff in the plan and failed to maintain accurate enrollment records, despite collecting Plaintiff's insurance

premiums.

82.    As a direct result of Defendant's failure to enroll Plaintiff, Plaintiff's claim for benefits was denied based on a purported lapse in coverage, rather than on any substantive evaluation of the medical claim.

83.    Plaintiff never received a certificate of insurance or plan terms describing eligibility requirements or benefit limitations because Defendant failed to effectuate her enrollment.

84.    Plaintiff exhausted all required administrative remedies by timely appealing the denial of benefits and providing proof of continuous premium payments, or exhaustion is excused due to Defendant's administrative failures.

85.    Defendant's actions violated ERISA by wrongfully denying Plaintiff benefits due under the plan and by preventing Plaintiff from enforcing her rights under the plan.

86.    Plaintiff seeks recovery of benefits due, enforcement of her rights under the plan, clarification of future benefits, prejudgment interest, attorneys' fees, and costs pursuant to 29 U.S.C. §§ 1132(a)(1)(B) and (g).

87.    In the alternative, Defendant was a fiduciary of the ERISA plan because it exercised discretionary authority and control over plan enrollment, administration, and communications with plan participants.

88.    Defendant breached its fiduciary duties by failing to properly enroll Plaintiff in the plan, failing to provide plan documents, continuing to collect premiums despite lack of enrollment, and misrepresenting or failing to disclose the status of Plaintiff's coverage.

89.    Defendant's breaches of fiduciary duty caused Plaintiff to suffer financial loss, including denial of insurance benefits and out-of-pocket medical expenses.

90.    Plaintiff seeks appropriate equitable relief, including surcharge, restitution, and other make-whole relief, pursuant to 29 U.S.C. § 1132(a)(3).

## COUNT X
## FLORIDA UNPAID WAGES FLA. STAT. § 448.08

91.    Plaintiff realleges and adopts the allegations stated in Paragraphs 1 through 39.

92.    At all times material, Plaintiff was employed by Defendant and performed work and services for Defendant for which she was entitled to compensation.

93.    As part of Plaintiff's employment, Defendant required Plaintiff to incur reasonable and necessary business expenses in furtherance of Defendant's business operations.

94.    On or around February 12, 2025, at the direction of Defendant's President, Kevin McCarthy, Plaintiff booked multiple hotel rooms in the Netherlands for a business conference scheduled for September 29, 2025.

95.     Plaintiff purchased the hotel rooms using her personal credit card, consistent with Defendant's standard business practices and Plaintiff's prior course of dealing with Defendant, under which Plaintiff routinely advanced business expenses and was reimbursed by Defendant.

96.    The total cost of the hotel rooms was $4,415.71, which constituted a reasonable and necessary business expense incurred solely for Defendant's benefit.

97.    Despite Plaintiff's compliance with Defendant's directives and despite the expense being customary and work-related, Defendant failed and refused to reimburse Plaintiff for the hotel expenses.

98.    Reimbursement of such business expenses was an expected and integral part of Plaintiff's compensation and was not discretionary.

99.    Defendant's failure to reimburse Plaintiff for mandatory and authorized business expenses constitutes a failure to pay earned wages and compensation due and owing under Florida law.

100.    As a direct and proximate result of Defendant's failure to pay Plaintiff

the wages owed, Plaintiff has suffered damages in the amount of $4,415.71, plus interest.

101.    Pursuant to Florida Statute § 448.08, Plaintiff is entitled to recover unpaid wages, interest, and reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff respectfully request all legal and equitable relief allowed by law including judgment against Defendant for back pay and benefits, front pay and benefits, compensatory damages, punitive damages, prejudgment interest, payment of reasonable attorneys' fees and costs incurred in the prosecution of the claim and such other relief as the Court may deem just and proper.

Dated: January 29, 2026

FLORIN|GRAY

/s/ *Troy E. Longman II*
**Troy E. Longman II**
Florida Bar No.: 1031921
tlongman@floringray.com
**Wolfgang M. Florin**
Florida Bar No.: 907804
wflorin@floringray.com
16524 Pointe Village Drive, Suite 100
Lutz, FL 33558
Telephone (727) 220-4000
Facsimile (727) 483-7942
*Attorneys for Plaintiff*

21